THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH K. CALDWELL, Defendant-Appellant.

Second District   No. 2—92—0996

Opinion filed March 21, 1994.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:
Defendant, Kenneth Caldwell, was convicted of forgery (Ill. Rev. Stat. 1991, ch. 38, par. 17—3(a)(2) (now 720 ILCS 5/17—3(a)(2) (West 1992))). The court sentenced him to two years' probation and ordered him to pay $5,500 in restitution. Defendant appeals, raising as his sole contention that the trial court erred in ordering restitution in an amount greater than the amount of the forged check charged in the indictment.

The indictment alleged that defendant, "with intent to defraud, knowingly delivered to Jennifer M. Ocampo *** a document apparently capable of defrauding another, Jennifer Ocampo, said document being check #108129 of Block and Company, drawn on the First National Bank of Mount Prospect, dated 4/15/91, payable to

Robert Turner in the amount of $1,402.03, signed as maker K.L. Block, and endorsed with the wording, 'Robert Turner pay to the order of Jennifer Ocampo,' knowing the document to have been thus made." Defendant contends on appeal that restitution could only be ordered for $1,402.03, the amount of the forged check for which defendant was charged.

The cause proceeded to a bench trial and the following evidence was adduced: Jennifer Ocampo met defendant while the two were working in the same shopping mall. On April 17, 1991, defendant telephoned Ocampo and asked her to meet him at the Gary Wheaton Bank in Carol Stream, Illinois, where Ocampo had a checking account. Ocampo agreed, and the two met at the bank. Defendant told Ocampo that he had started a business, and he asked whether Ocampo would deposit a check into her account so that he could withdraw funds. Defendant gave Ocampo two checks. The first was issued by Block and Company in the amount of $1,402.03, payable to Robert Turner and had already been endorsed in that name. Ocampo saw defendant endorse the check over to her. The second check Ocampo deposited for defendant was in the amount of $2,000.

According to Ocampo, defendant told her that he owned Block and Company and that Robert Turner was an employee and friend who owed defendant money. Defendant told Ocampo that the check was in repayment of a loan. Defendant and Ocampo approached the teller's window, where Ocampo deposited the checks and simultaneously requested a withdrawal of $1,000 at defendant's direction. Ocampo gave defendant the $1,000 and the deposit slip. She refused defendant's offer to accept $500 for her trouble and for continuing help in cashing forthcoming checks.

Two days later, defendant asked Ocampo to deposit two more checks and withdraw $2,000. Again, the checks were issued by Block and Company. Ocampo complied and gave defendant $2,000 cash that she received from the transaction. Ocampo later received notice from the bank that her checking account was overdrawn and that payment had been stopped on the checks she had deposited for defendant. She told defendant of the problem, and defendant assured Ocampo that he would take care of the problem. Ocampo never heard from defendant again.

Terry Anderko, a teller at the Gary Wheaton Bank, testified that at approximately 3:45 p.m. on April 17, 1991, a man and woman approached her window. The woman made a "split deposit"; that is, she deposited checks into her account and simultaneously withdrew $1,000 in cash. Anderko remembered the incident because she had made an error in the transaction and defendant had approached her

window to inform her of the mistake. Anderko identified defendant and Ocampo from photographs taken by a surveillance camera in the bank.

Thomas Marzullo, a financial officer for Block and Company, testified that Robert Turner was a sales representative for Block and Company, and the company sent Turner's commission checks through the United States mail. Turner had stated that he had not received the check in question so the company had stopped payment on the check. Marzullo did not know defendant, and the company records showed that defendant did not work for Block and Company.

Robert Turner testified that he worked for Block and Company. He usually received his checks on the 15th and 30th of each month. On April 16, 1991, when he had not received his first check of the month, he contacted the company and later received a replacement check. Turner did not know defendant, had not borrowed money from him, and had never agreed to repay a loan with his April 15, 1991, commission check. Turner did not give defendant permission to sign his name on the back of the check or to give it to anyone else.

John Gorajczyk, a document examiner from the Du Page County Crime Laboratory, testified that he compared the handwriting from the endorsement on the check with defendant's handwriting exemplars. In Gorajczyk's opinion, there was a high probability that defendant wrote Robert Turner's name. Gorajczyk could not make a positive identification. Gorajczyk also believed that the person who wrote "Robert Turner" on the back of the check also wrote "pay to the order of Jennifer Ocampo" on the back of the check.

The court found defendant guilty of forgery. At the sentencing hearing, Jennifer Ocampo testified that the Gary Wheaton Bank had obtained a judgment against her in the amount of $5,500 for the four checks she had deposited at defendant's behest between April 17, 1991, and April 19, 1991. The State requested that defendant be given probation and ordered to pay restitution in the amount of $5,500. Defense counsel also requested that defendant receive probation and stated that the defense had no objection to an order of restitution as long as an actual judgment against Ocampo was produced. The court sentenced defendant to two years' probation and ordered him to pay $5,500 restitution. Defendant filed a timely notice of appeal.

On January 11, 1993, the parties appeared before the court and informed the court that defendant had been convicted of a crime in Will County and had been sentenced to imprisonment. Defense counsel requested that defendant's probation in the instant case be terminated unsuccessfully and asked whether the restitution could

be shown in a civil judgment. The court agreed and entered an order stating, "1) Defendant unsatisfactorily terminated from probation. 2) Civil judgment entered in the amount of $5,500 on behalf of Jennifer Ocampo and Gary-Wheaton Bank."

Before addressing the merits of defendant's argument that the amount of restitution was improper in this case, we must first determine whether, as the State urges, this issue has become moot in light of the proceedings subsequent to the filing of the notice of appeal in this case. We hold that the issue is moot and that this cause should be dismissed.

Defendant is attempting to appeal from an order of restitution which no longer exists. Since restitution was a condition of defendant's probation, which was terminated unsuccessfully before the end of the term, defendant is no longer required to pay restitution *as part of his sentence* in the cause which is presently being appealed. The issue raised by defendant in this appeal is therefore moot. *In re R.L.B.* (1987), 158 Ill. App. 3d 175, 177.

Defendant makes two arguments against a finding of mootness. First, he argues that the holding in *People v. Bertalot* (1987), 164 Ill. App. 3d 89, 92-93, that contempt proceedings can be used to recover restitution even after a defendant has completed his term of probation, indicates that here, where defendant's probation was terminated unsuccessfully, the order of restitution is an independent sentencing disposition which survives the termination. We disagree.

While *Bertalot* does hold that the expiration of a probation term does not relieve a defendant of complying with certain conditions of probation, including restitution (*Bertalot*, 164 Ill. App. 3d at 92-93), that does not in turn mean that an unsatisfactory termination of a probation term before the term has run leaves all attendant conditions intact. The situation at issue is analogous to a revocation of probation. Where a defendant's probation is revoked, the court may impose any sentence that would have been appropriate for the original offense. (*People v. Vilces* (1989), 186 Ill. App. 3d 983, 986.) Obviously, the trial court could again require restitution. That possibility, however, does not mean that the conditions of the original term of probation remain in effect with a new sentence of probation or even imprisonment. (See *In re R.L.B.* (1987), 158 Ill. App. 3d 175, 177.) Similarly, where the period of probation has not run, the unsatisfactory termination of the original probation term does not leave the attendant conditions intact.

We also reject defendant's second argument against a finding of mootness. Defendant contends that a court should not find an issue moot where there are collateral legal consequences which survive the

expiration of the order under review. (See *In re Sciara* (1974), 21 Ill. App. 3d 889, 893-94.) The order here has not expired; it has been terminated by defendant's action. It is not the effect of an order in this case which has collateral consequences, for that order is no longer standing. Rather, the order which is being challenged by defendant is an independent civil judgment entered subsequent to the cause that is presently on appeal to this court. We need not determine the court's authority or reason for entering such an order, because that order, entered after an appeal in this case had been timely filed, is not part of the original sentence and cannot be challenged in this appeal.

We note that defendant as much as admits that this court's opinion in this matter would be little other than advisory. He states that if this court were to hold that the restitution amount ordered in this case was improper, then he would have to challenge the civil order using this opinion as authority. "Illinois courts have held repeatedly that when an opinion on a question of law cannot affect the parties, a court should not issue what is essentially an advisory opinion merely to establish precedent or govern future cases." *In re L.L.* (1993), 243 Ill. App. 3d 1010, 1012.

For the foregoing reasons, we dismiss this appeal as moot.

Appeal dismissed.

McLAREN and GEIGER, JJ., concur.